**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 16 2012, 8:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL EARLS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1108-CR-754 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable Michael Jensen, Magistrate
Cause No. 49G20-0911-FB-92701

April 16, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Michael Earls appeals from his conviction for Class B felony Dealing in Cocaine,[1] contending that the exclusion of the public during one witness's testimony amounted to reversible error. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On November 3, 2009, Indianapolis Metropolitan Police Detectives Richard Wilkerson and Craig Wildauer went to the home of Norris Griffin. Norris permitted the uniformed detectives into his home, inside which they observed drug paraphernalia in plain view. Norris allowed the detectives to search his house, a search that produced a handgun. When Norris agreed to cooperate with police, the detectives called in Detective Brad Ball.

After speaking with Detective Ball, Griffin agreed to attempt to arrange for drug dealers to sell him cocaine at his house that night. The detectives moved their vehicles away from the house, and Griffin made four telephone calls attempting to arrange a cocaine sale. Earls returned one of Griffin's calls, informed him that he had cocaine to sell, and arrived at the house shortly thereafter. When Griffin gave a prearranged verbal signal, police emerged and confronted Earls, who dropped a package that was later tested and determined to hold 1.1885 grams of cocaine-containing substance.

On November 4, 2009, the State charged Earls with Class B felony dealing in cocaine and Class D felony cocaine possession. Before trial, the following exchange regarding Griffin's upcoming testimony took place:

---

[1] Ind. Code § 35-48-4-1 (2009).

THE COURT: Is there anything else we need to take care of before we go to copying the instructions and finish getting ready?

MS. RAY: Yes, your honor. Before – at one point when the confidential informant testifies, the State is going to be asking to clear the courtroom. We have had issues, the confidential informant has had issues of gunshots near or at his house. He has been called "snitch" by multiple people recently, and like within the last year, people around the neighborhood ask him about this case. And we would ask to clear the courtroom – the gallery of any defense family or friends.

THE COURT: Ms. Devane?

MS. DEVANE: Judge, I think that's up to the Court's discretion. All courtrooms are open to the public as the court well –

THE COURT: Right.

MS. DEVANE: – knows. There are exceptions. I'm not sure this falls under one of them. I think it's up the discretion of the Court as to whether or not it does. I have no knowledge nor reason to believe that Mr. Earls was to communicate anything to this individual. This case has been going on two years, but – and he was out for a long time – for a time.

THE COURT: For a time.

MS. DEVANE: A very long time, but it's up – I would just leave it to the discretion of the Court.

THE COURT: Okay. So there has been actual comments made about this particular case?

MS. RAY: Yes. The confidential informant has been questioned by various individuals – never the defendant, but he has been questioned by numerous people about his testimony, about his role in this case. I think he said last week someone drove by him, "snitch" out the window at him. And there were gunshots near his house prior to the last jury setting, with the week before his last jury setting.

THE COURT: All right. Well, due to the fact that it was apparently aimed right at this case, the harassment, I'm going to grant the State's request. I think there are special circumstances here. It's just not general issues, but issues related to this particular case. So I'll have the gallery members, if you move – obviously defendant gets to stay – but the spectators we'll ask to be removed, and we'll close the courtroom during that one witness's testimony. All right.

MS. DEVANE: So if his mother or father come in, they can stay? I don't think they're going to be here, I think his father had to work.

DEFT. EARLS: My father is right here.

MS. RAY: I don't know who was making accusations or asking about this case. I would ask that the defendant's family or friends be excluded.

THE COURT: I'm going to excluded everybody, then, since we have no idea who's making the threats.

MS. DEVANE: That's fine, Your Honor.

Tr. pp. 24-26. A jury found Earls guilty as charged, and the trial court entered judgment on the Class B felony dealing in cocaine count only. On August 2, 2011, the trial court sentenced Earls to eighteen years of incarceration.

## DISCUSSION AND DECISION

### Whether the Exclusion of the Public During Griffin's Testimony Constituted Fundamental Error

Earls contends that his Sixth Amendment right to a public trial was violated when the trial court excluded all spectators during Griffin's testimony. The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"

The right to a public trial has long been recognized as a fundamental right of the accused. [*In Re*] *Oliver*, 333 U.S. [257,] 266–67, 68 S.Ct. [499,] 504 [(1948)]; *Hackett* [*v. State*], 266 Ind. [103,] 109, 360 N.E.2d [1000,] 1004 [(1977)]. It helps ensure a fair trial because "the presence of interested spectators may keep [the accused's] triers keenly alive to a sense of their responsibility and to the importance of their functions…." *Waller* [*v. Georgia*], 467 U.S. [39,] 46, 104 S.Ct. [2210,] 2215 [(1984)] (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380, 99 S.Ct. 2898, 2906, 61 L.Ed.2d 608 (1979) (in turn quoting *Oliver*, 333 U.S. at 270 n.25, 68 S.Ct. at 506 n.25)). It protects the accused by allowing the public to assess the fairness of the proceedings. In addition, it encourages witnesses to come forward, and discourages perjury. *Waller*, 467 U.S. at 46, 104 S.Ct. at 2215…. However, [the defendant's right to public trial is not] absolute. Complete or partial exclusion of the public may be justified if a court finds "that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Waller*, 467 U.S. at 45, 104 S.Ct. at 2215 (quoting *Press–Enterprise* [*Co. v. Superior Court of California*], 464 U.S. [501,] 510, 104 S.Ct. [819,] 824 [(1984)]). *See also Hackett*, 266 Ind. at

4

110, 360 N.E.2d at 1004 (exclusions may be justified by a legitimate purpose that furthers the integrity of the judicial process, so long as there is a sufficient record supporting the court's exercise of discretion). Examples of valid exclusions include forbidding the televising of a public trial, *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) and protecting a witness fearful of retaliation by those attending the trial, *Hackett*, 266 Ind. at 110, 360 N.E.2d at 1004; *Kendrick* [*v. State*], 661 N.E.2d [1242,] 1242 [(1996)].

*Williams v. State*, 690 N.E.2d 162, 167 (Ind. 1997) (brackets around "the accused's" in *Williams*, all others supplied). "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48.

Applying the *Waller* factors, we conclude that the record is sufficient to support the trial court's exclusion of the public during Griffin's testimony. The State requested the closure because of concern for Griffin's safety, a legitimate interest that may justify a courtroom closure. *See, e.g.*, *Williams*, 690 N.E.2d at 167. The record indicates that Griffin had been called "snitch" by "multiple people" shortly before trial, had been asked by numerous persons about his upcoming testimony, and had heard gunshots "near or at his house" within a week before a prior trial setting. In our view, the term "snitch" is pejorative enough that its use under the circumstances here may reasonably be considered a threat (especially when shouted out the window of a passing vehicle). And, while the gunshots may not have had anything to do with Earls's case, we cannot say that it would be completely unreasonable to think that there might have been some connection.

The record is also sufficient to demonstrate that the closure was no broader than necessary and that the trial court considered reasonable alternatives to closure. As the trial court noted, only a complete closure of the courtroom during Griffin's testimony would suffice because the persons threatening Griffin were unknown. Moreover, the trial court considered and rejected Earls's request that his parents be allowed to stay, a request that while not unreasonable on its face, was rendered unreasonable by the lack of knowledge concerning the source of the threats. We conclude that the trial court did not abuse its discretion in clearing the courtroom during Griffin's testimony.[2]

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.

---

[2] The State notes that Earls failed to object to the closure and argues that he waived the claim for appellate review. The State also argues that any error the trial court may have made was harmless. Earls contends that a claim of denial of the right to public trial neither can be waived nor is subject to harmless error analysis because it always constitutes "structural error" such that prejudice is presumed. Because we find the record sufficient to justify the trial court's limited closure, we leave these questions for another day.